McAdam, C. J.
The plaintiff conducts business under the name of the Liberty Printing Co., and Otto Alexander is his cashier and book-keeper. In the ordinary course of his duties Alexander filled up three blank checks and took them to the plaintiff who signed them. They were payable to the order of three different payees, one to Henry Luidenmyer, one to J. E Luidenmyer and the other to E. Wesel & Co. After the checks were signed by the plaintiff, Alexander discovered errors in the amount, and being unable to find the plaintiff to correct them, he endorsed the names of the payees on the checks and deposited them to his own credit with the defendant, who is a banker.
Alexander then went to the payees and paid their respective claims.
The checks were never delivered to the payees so that no title to the checks or their proceeds ever vested in them.
The plaintiff ratified the acts of Alexander, and took from Mm an assignment of Ms claim agamst the defendant, so that the plaintiff as principal and assignee of Ms agent Alexander seeks to recover the amount deposited.
The defendant defends on the ground that if he pays the amount claimed, the payees of the three checks may call upon Mm to make good the amount represented by them. There is no legal ground for tMs fear, as the payees can make no such claim.
The proposition is practically reduced to this: A, draws Ms check payable to the order of B, for an incorrect amount. He discovers Ms' error and without delivering the check to *264 B, or informing B, of its existence, A, to correct the error authorizes his book-keeper to deposit the checks to his credit, and to pay the correct amount due B. The bookkeeper does this after endorsing the payee’s name thereon. Now, can the depository who subsequently collects the proceeds decline to pay them over because perchance B, may sometime or other claim the money on the theory that his endorsement was forged? The effective answer is this, that B, never had any title to the check and can have no claim to the proceeds.
The checks were drawn by the plaintiff, and never had any legal inception until the defendant collected them, and the proceeds when collected belonged to the plaintiff.
The money collected was the plaintiff’s and never ceased to be his, and he has adopted the peculiar metheds employed by his cashier to realize upon them, the method so far as the ownership of the fund is concerned gave no title whatever to the payees and divested the plaintiff of none of his rights or equities. The names of the payees were not fraudulently used.
The checks were not cashed on the credit of their names, they were merely deposited for collection, and no claim was made for the proceeds until after the defendant had collected the same. The endorsements created no liability on the payees and was not intended to create any. The method employed was a stupid, unbusinesslike one, not to be commended, but hardly rising to the dignity of forgery because of the total absence of fraudulent intent. Penal Code, § 509 But however this may be it will be time enough to consider this question seriously when the payees call upon' Mr. Alexander to answer for his indiscretion.
It is enough for the purposes of the present contention to decide that the payees never acquired any interest in or title to the checks or their proceeds, and that the defendent as the agent and depository of Alexander has no right under' the circumstances to withhold from the plaintiff moneys to which he and no one else is lawfully entitled. Of course, a party cannot base title to a check through a forged endorsement (Canal Bank v. Bank of Albany, 1 Hill, 289, and kindred cases); but the plaintiff does not claim title through such a source, for the payees had no title to confer, and the use of their names was upon the evidence a mere form thoughtlessly employed which divested them of nothing, conferred upon them no rights and imposed upon them no liability.
The plaintiff might have stricken out their names as Eayees, and inserted instead the term “bearer,” or might ave added “or bearer” after their names, and thus obviated the formal use of their names as endorsers, and for
*265 all the purposes of this case, this may be regare^ ing been done.
The plaintiff produced the checks upon the1 offered to cancel or destroy them. He could do If the defendant wanted to raise a conflict as to 'the facts, he should have called the payees and proved by them that they made some claim to the checks or their proceeds, disclosing the nature of it; but the payees were not called, and there is no evidence that they have any claim or ever pretended to have any. If the payees had been interpleaded as defendants, they would have been defeated on the evidence offered, which fails to show the slightest right of action or equity in them to the checks or their proceeds. The payees were not interpleaded, indeed, it does not appear that they could have been, for they never made any claim to the fund or any part of it. Code, § 820.
In short, the question is narrowed to whether the plaintiff shall be permitted to recover from the defendant money confessedly the property of the former, or whether the defendant, who has no title to it whatever, shall be allowed to retain it as his own, because of the stupidity of the _ plaintiff’s book-keeper in departing from ordinary business methods in attempting to correct errors in the checks deposited. I know of no principle of law or justice which deprives a man of his property on any such ground. There was no defense to the action, and the trial judge properly directed a verdict in favor of the plaintiff for the amount claimed, and the judgment entered on the verdict must be afflmed with costs.
Hyatt, J.,